IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 2:05-cr-129-A |
| ) | |
| TERESO RODRIGUEZ LOPEZ ) | |

**MOTION TO SUPPRESS STOP, SEARCHES AND SEIZURES**

**COMES NOW** the Defendant, Tereso Rodriguez Lopez, by and through undersigned counsel, Kevin L. Butler, and pursuant to the Fourth Amendment, Fifth Amendment, and Equal Protection Clause of the Constitution moves this Court for an Order suppressing any and all evidence seized by the government as a result of the stop of Mr. Rodriguez-Lopez' vehicle. This evidence includes any statements, physical evidence and/or records obtained as a result of the stop and search of Mr. Rodriguez-Lopez' vehicle.

**Issues Presented**

1) Whether the Equal Protection Clause Prohibits Racial Profiling

2) Whether the Fifth Amendment Prohibits Police Interrogation Under The Guise of Routine Questioning

3) Whether the Fourth Amendment Prohibits Government Searches Conducted Without Consent, Cause or Suspicion

**Relevant Facts**

According to the United States Bureau 2003 Annual Estimate of Population, approximately 4,500,752 individuals live in Alabama. See *United States Census Bureau 2003 Annual Estimate of Population*. Of this figure approximately 2% or 89,195 are of Hispanic or Latino origin. Id. [1]

---

[1] Because of socio-economic factors the percentage of Hispanic or Latino "automobile drivers" is less than the 2% figure. Undersigned counsel is attempting to retrieve

Between January of 2000 and June 2002, Trooper Peoples sought consent to search vehicles from 88 drivers. Of these 88 drivers, 50 (or 57%) of the individuals were of Hispanic or Latino origin. Accordingly, Trooper Peoples asked consent to search vehicles of individuals of Hispanic or Latino origin at a rate that was 28 times greater than their representation in the State of Alabama. Additionally during this time period, Trooper Peoples issued approximately 202 traffic warning citations (warning tickets).[2] Of these 202 warning tickets, 66 (or 33%) of the warning tickets written by Trooper Peoples were issued to persons of Hispanic or Latino origin. Accordingly, Trooper Peoples issues warning tickets to persons of Hispanic or Latino origin at a rate 16 times greater than their representation in the State of Alabama.[3]

The Federal Defender's Office and private counsel have represented a small sampling of persons of Hispanic or Latino origin whose vehicles have been stopped by Trooper Peoples.[4] In all of these cases, Trooper Peoples employs similar and questionable methods in stopping and searching the vehicles.[5]

---

this data/information.

[2]   Undersigned counsel is presently attempting to obtain the tickets issued by Troopers Peoples during 2003-2005.

[3]   When these two statistics are read together it appears that at far greater proportional rate than non-Hispanics, Trooper Peoples stops Hispanic and Latino drivers for very minor vehicle infractions and then attempts to get their consent for a vehicle search.

[4]   Undersigned counsel is attempting to gather additional records in these cases.

[5]   The same methods were employed on November 2, 2004. On this date Alabama State Trooper Jason Burch stopped Jose Luis Arroyo-Garcia near mile marker 163 on I-65 for a minor traffic violation. Mr. Arroyo-Garcia is a Hispanic individual who was driving a vehicle with a Texas license plate. Mr Jose Luis Arroyo-Garcia was prosecuted in this Court in United States v. Jose Luis Arroyo-Garcia, 2:04-cr-0221-T.

1)       On or about February 2000, Trooper Jessie Peoples, an Alabama State Trooper (Trooper Peoples), stopped Panfilo Rodriguez Jr., near mile marker 163 on I-65 for a minor traffic violation. Mr. P. Rodriguez is a person of Hispanic or Latino origin who was driving a vehicle with a Texas license plate. The vehicle was in good condition with no visible mechanical defects. Trooper Peoples employed suspect methods in searching the vehicle. Based upon the search, Mr. P. Rodriguez was prosecuted in this Court in <u>United States v. Panfilo Rodriguez</u>, CR. No. 00-43-N. As a result of negotiations, this case was settled.

2)       On or about March of 2001, Trooper Peoples stopped Deborah Rodriguez near mile marker 163 on I-65 for a minor traffic violation. Ms. D. Rodriguez is a Hispanic individual who was driving a vehicle with a Texas license plate. The vehicle was in good condition with no visible mechanical defects. After writing a warning ticket, Trooper Peoples employed suspect methods in obtaining consent and subsequently searching the vehicle. Based upon the search, Ms. D. Rodriguez was prosecuted in this Court in <u>United States v. Deborah Rodriguez</u>, CR. No. 01-59-N. As a result of negotiations, this case was settled.

3)       On or about June 2002, Trooper Peoples stopped Manuel Munoz-Betancur near mile marker 163 on I-65 for a minor traffic violation. Mr. Munoz-Betancur is a Hispanic individual who was driving a vehicle with a Texas license plate. After writing a warning ticket, Trooper Peoples employed suspect methods in obtaining consent and then searched the vehicle. Based upon the search, Mr. Munoz-Betancur was prosecuted in this Court in <u>United States v. Manuel Munoz-Betancur</u>, CR. No. 01-59-N. As a result of negotiations, this case was settled.

4)       On June 30, 2003, Trooper Peoples stopped Alejandro Salazar and Joanna Hernandez near mile marker 163 on I-65 for a minor traffic violation. The driver is a Hispanic individual who was driving a vehicle with a Texas license plate. After writing a warning ticket, Trooper Peoples employed suspect methods in obtaining consent and then searched the vehicle. Based upon the search, Mr Salazar and Ms. Hernandez were prosecuted in this Court in <u>United States v. Jesus Alejandro Salazar & Joanna Hernandez</u>, CR. No. 03-142. *A motion to suppress based upon grounds asserted in this pleading was granted in this case.*

5)       On or March 9, 2005, Trooper Peoples stopped Juan R. Leal near mile marker 163 on I-65 for a minor traffic violation. Mr. Leal is a Hispanic individual who was driving a vehicle with a Texas license plate. After writing a warning ticket, Trooper Peoples employed suspect methods in obtaining consent and then searched the vehicle. Based upon the search, Mr. Leal was prosecuted in this Court in <u>United States v. Juan Leal</u>, CR. No. 2:05-cr-0062-F. After a suppression hearing before this Court, the government dismissed the case.

On or about April 19, 2005, Trooper Peoples stopped a vehicle driven by Tereso Rodriguez-Lopez near mile marker 163 on I-65 for minor traffic violation.[6] Mr. Rodriguez-Lopez is an individual of Hispanic or Latino origin and he was driving a vehicle with Texas license plates.

After retrieving Mr. Rodriguez-Lopez' driver's license and explaining to Mr. Rodriguez-Lopez the reason for the vehicle stop, Officer Peoples ordered him out the vehicle and into Officer People's patrol car. During the next two minutes, Officer Peoples begins to run a license check on Mr. Rodriguez-Lopez and asks Mr. Rodriguez-Lopez a series of questions related to the vehicle stop (e.g. Who owns the vehicle? Where was he headed?).

While running a license check on Mr. Rodriguez-Lopez, Trooper Peoples then began to interrogate Mr. Rodriguez-Lopez regarding matters completely unrelated to the traffic stop. Specifically, Trooper Peoples inquired into: (1) Mr. Rodriguez-Lopez' employment, (2) Why Mr. Rodriguez-Lopez was picking up a truck in Atlanta, GA, (3) how Mr. Rodriguez-Lopez planned on getting the truck back to Texas, (4) who bought the truck Mr. Rodriguez-Lopez would return to Texas, (5) how Mr. Rodriguez-Lopez would find the truck to tow, (6) where would the truck be stored in Atlanta, Georgia.

Trooper Peoples then inquires as to the location of the vehicle's insurance verification. Mr. Rodriguez-Lopez informs him they are in the glove box. Trooper Peoples then exits the patrol car and without Mr. Rodriguez-Lopez' consent conducts a search of the glove box and various other areas of the vehicle. During this unauthorized search, in addition to the insurance documentation, Trooper Peoples also retrieves a Georgia traffic citation that is within the vehicle.

---

[6] Trooper Peoples alleges Mr. Rodriguez-Lopez was traveling 68 miles per hour in a stretch of interstate where the speed limit is normally 65 mph. However, at the time of the vehicle stop the speed limit had been lowered to 50 mph due to road construction in the area.

Upon returning the vehicle, Trooper Peoples begins to question Mr. Rodriguez-Lopez regarding the Georgia traffic citation. During this questioning, dispatch confirms Mr. Rodriguez-Lopez' identification and informs Trooper Peoples Mr. Rodriguez-Lopez has no warrants. Trooper Peoples then issues Mr. Rodriguez Lopez a warning citation.

**However, after the warning ticket was issued, Trooper Peoples does not release Mr. Rodriguez-Lopez**. Instead, without any cause, Trooper Peoples further interrogates Mr. Rodriguez-Lopez on additional matters unrelated to the stop and which do not give cause to believe that any criminal activity is "a foot". As part of this further interrogation and without cause, Trooper Peoples conducts a search of the vehicle.

Pursuant to that search, a large quantity of what is alleged to be cocaine is located in the vehicle. Mr. Rodriguez-Lopez is then arrested. Mr. Rodriguez-Lopez is subsequently charged in this court with possession with intent to distribute cocaine.

## Discussion

**I.    The Equal Protection Clause Prohibits the Racially Motivated Police Practices (Profiling) Engaged in by Trooper Peoples.[7]**

"Racial profiling of any kind is anathema to our criminal justice system." *United States v. Leviner*, 31 F.Supp.2d 23, 33 (D.Mass 1998). "We [the United States Supreme Court] of course agree ... that the Constitution prohibits selective enforcement of the law based on consideration such

---

[7]    It is anticipated the government will argue that because Trooper Peoples asserts there was a justifiable basis for the stop of Mr. Rodriguez-Lopez, the stop conforms with the requirements of the Fourth Amendment. *Whren v. United States*, 116 S.Ct. 1769 (1996). However, Mr. Rodriguez-Lopez is not presently challenging the vehicle stop on Fourth Amendment grounds (unless testimony and evidence raises this issue). Mr. Rodriguez-Lopez is challenging the vehicle stop as violative of the Equal Protection Clause. Mr. Rodriguez-Lopez is challenging the search of the vehicle on Fourth Amendment grounds.

as race. ... [T]he constitutional basis for objecting to intentionally discriminatory application of the law is the Equal Protection Clause." *Whren v. United States*, 116 S.Ct. 1769, 1774 (1996).

The Eleventh Circuit has not specifically addressed or adopted a method of analyzing and remedying vehicle stops that are in violation of the Equal Protection Clause. However, guidance can be obtained from other circuits' jurisprudence and analysis of similar facts and the Eleventh Circuit's opinions issued in civil cases. The First Circuit has held that when challenging car stops as pretextual and in violation of the Equal Protection Clause, "in order to prevail ... [a defendant] must present evidence that he was treated differently from similarly situated non-Hispanic motorists and that the action taken against him was motivated, at least in part, by his race. *Flowers v. Fiore*, 359 F.3d 24, 35 (1st Cir. 2004). More specifically, to show a violation of the Equal Protection Clause, a party must prove that the actions of the government official had a discriminatory effect and were motivated by a discriminatory purpose. *Chaves v. Illinois State Police*, 251 F.3d 612, 635 (7th Cir. 2001).

To show "discriminatory effect," the defendant must show that he was a member of a protected class and that members of the non-protected class were treated differently. Id. This can be done by showing how specifically named people (protected v. non-protected) were treated differently or through the use of material and relevant statistics. *Id.; See also Int'l Bd. of Teamsters v. United States,* 97 S.Ct. 1843 (1977). To show "discriminatory intent" the defendant must show that the government official purposefully acted in a manner that would have an adverse affect upon an identifiable group. *McClesky v. Kemp*, 481 U.S. 279, 298 (1979); See e.g., *Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004). Because evidence of discriminatory intent is often intangible (i.e.they don't exist as a written or audio recording or discriminatory intent) one must look at the facts and

circumstances surrounding the government official and his actions. (citation omitted).

In this case, Trooper Peoples' practice of requesting consent to search forms from Hispanic and Latino drivers at a rate that is 26 times greater than their representative population in Alabama shows that Trooper Peoples' police practices have a discriminatory effect on a protected class (individuals of Hispanic or Latino origin). This same documentation also shows discriminatory intent. The documentation shows that Trooper Peoples possesses a racial bias against individuals of Hispanic or Latino origin.

As will be discussed later in this pleading, after a warning ticket or traffic citation is issued, unless a police officer has a "reasonable suspicion" based upon objective facts that an individual is engaged in legal wrongdoing separate from the basis of the stop, the person/vehicle must be released. *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003); *United States v. Perkins*, 348 F.3d 965 (11th Cir. 2003). However, Trooper Peoples' history shows that he believes that Hispanic or Latino individuals are at least 26 times more likely to be engaged in illegal activity than other drivers and he intentionally and purposefully requests consent to search their vehicles.

Mr. Rodriguez-Lopez is not in possession of any documentation or recording in which Trooper Peoples affirmatively expresses his discriminatory intent to stop Hispanic or Latino persons. Such a document probably does not exist and will never be produced. However, we do have available objective and tangible evidence and statistics which show Trooper Peoples' intent. As it is clear that Trooper Peoples' actions have a discriminatory effect on Hispanic and Latino individuals and it is Trooper Peoples' discriminatory intent to stop these individuals because he harbors some belief that these individuals are more likely engaged in legal wrongdoing, Trooper Peoples' stop of Mr. Rodriguez-Lopez, and likely many others, is in violation of the Equal Protection Clause. The

stop and the fruits of the stop must therefore be suppressed.

**II.    Trooper Peoples' Interrogation on Matters Unrelated to the Basis for the Stop Was an Improper Seizure**

During the time Mr. Rodriguez-Lopez was detained in the patrol car, while Trooper Peoples sought license verification, Trooper Peoples was allowed to question Mr. Rodriguez-Lopez on matters unrelated to the traffic stop. *United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001). However, when police ask investigative questions under the guise of "routine questioning," *Miranda* warnings are required. *United States v. Glen-Archila*, 677 F.2d 809 (11th Cir. 1982).

In this case, after Trooper Peoples stopped Mr. Rodriguez-Lopez and prior to initiating a license check on Mr. Rodriguez-Lopez and explaining the basis for the stop, he asked where Mr. Rodriguez-Lopez was traveling from and where Mr. Rodriguez-Lopez was traveling to, as well as who owned the vehicle. Mr. Rodriguez-Lopez informed Trooper Peoples that he was traveling from Atlanta, Georgia to Houston, Texas and that the vehicle was owned by "Leon". This questioning is not being challenged as it was related to the car stop and is a part of a normal traffic investigation.

However, after asking these preliminary questions Trooper Peoples then began to interrogate Mr. Rodriguez-Lopez regarding matters completely unrelated to the traffic stop. Specifically, Trooper Peoples inquired into: (1) Mr. Rodriguez-Lopez' employment, (2) why Mr. Rodriguez-Lopez was picking up a truck in Atlanta, Georgia, (3) how Mr. Rodriguez-Lopez planned on getting the truck back to Texas, (4) who bought the truck Mr. Rodriguez-Lopez would return to Texas, (5) how Mr. Rodriguez-Lopez would find the truck to tow, (6) where would the truck be stored in Atlanta, Georgia.

Had Trooper Peoples released Mr. Rodriguez-Lopez after his license had been verified and

the warning ticket issued, these questions would not normally be suspect. However, without apparent cause, after the warning citation is issued, Mr. Rodriguez-Lopez is further detained and interrogated further regarding the matters listed above which are unrelated to the vehicle stop.

Trooper Peoples' conduct shows that he was fishing for information unrelated to the stop, upon which he could possibly develop cause for other police activity. Because the alleged "routine questioning" was a guise for a police investigation, *Miranda* warnings were required. *United States v. Glen-Archila*, 677 F.2d 809 (11th Cir. 1982). As no *Miranda* warnings were provided prior to this police interrogation, any statements given in response to the questioning must be suppressed. Additionally, any police activity (i.e. the search) based upon these un-*Mirandized* questions must also be suppressed.

The warrantless search of the vehicle's glove compartment was in violation of the Fourth Amendment

**III.    The Eleventh Circuit's Holding in *United States V. Perkins*, 348 F.3d 965 (11th Cir. 2003) and <u>United States V. Boyce</u>, 351 F.3d 1102 (11th Cir. 2003) Specifically Prohibited the Further Questioning and Detention of Mr. Rodriguez-Lopez after the "Warning Ticket" Was Issued**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Const. Amend IV. While not all police-citizen encounters trigger Fourth Amendment scrutiny, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and it is analogous to an investigative detention. *United States v. Perkins*, 348 F. 3d 965, 969 (11th Cir. 2003). Therefore, the legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* requires that such stops require "an officer [to] have an objective, reasonable suspicion of criminal

9

activity," before seizing (or continuing to seizure of) an individual. *Id*. Therefore, if officer has cause to believe an individual has committed a traffic infraction, the individual can be stopped and seized while the traffic infraction is investigated and activities related to the traffic stop are concluded. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir.2001).

Some of these investigative activities are a driver and criminal history check. *United States v. Boyce*, 351 F.3d 1102 (11th Cir. 2003). Subsequently, drivers and their vehicles can be detained after a valid traffic stop while a "license check" or "criminal history check" are being conducted. *Id*. However, after an individual has been issued a citation or warning ticket, any prolonged detention of an individual without "reasonable suspicion" of other criminal activity is a violation of the Fourth Amendment. *Boyce*, 351 F.3d at 1107; *Perkins*, 348 F.3d at 970; *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999).

Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify such an investigatory stop is determined based on the totality of the circumstances, and from the collective knowledge of the officer involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (citing, *Terry v. Ohio* at 1879); See also, *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop). The fact that the driver is nervous, has out-of-state tags and/or provides slightly inconsistent statements does not create "reasonable suspicion" upon which a further detention is warranted. *Perkins*, 348 F.3d at 965;  *Pruitt*, 174 F.3d at 1219-1221; *Tapia*, 912 F.2d 1367, 1370.

At an evidentiary hearing, Mr. Rodriguez-Lopez will show that after the warning ticket was

issued to Mr. Rodriguez-Lopez, Trooper Peoples had no "reasonable suspicion" upon which he could base any further detention. At most, Trooper Peoples had been provided some unclear and possibly inconsistent statements by Mr. Rodriguez-Lopez. However, the Eleventh Circuit has made it clear that this can not form the basis of continued detention. *Id*. Because the further detention of Mr. Rodriguez-Lopez was prohibited by the Fourth Amendment, any questioning, answers and consent that stem from the further detention must be suppressed/excluded. *Perkin*s, 348 F.3d at 969 (citing *United States v. Terzado-Madruga*, 897 F.3d 1099, 1112 (11th Cir. 1990)).

## Conclusion

Because the stop of Mr. Rodriguez-Lopez was in violation of the Equal Protection Clause, the questioning of Mr. Rodriguez-Lopez was in violation of the Fifth Amendment and there was no Fourth Amendment justification for the subsequent search of Mr. Rodriguez-Lopez's vehicle. Any and all evidence, information or statements obtained as a result of his unlawful detention must be suppressed.

**WHEREFORE**, the Defendant prays that this Honorable Court conduct an evidentiary hearing to review the facts and circumstances surrounding the stop of his vehicle, and after conducting such hearing, issue an Order granting the motion and suppressing all evidence seized during the seizure or as a result thereof. Additionally, any and all statements obtained as a result of the unlawful seizure are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Respectfully submitted,

s/ Kevin L. Butler
KEVIN L. BUTLER
First Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: kevin_butler@fd.org
AZ Bar Code: 014138

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 2:05-cr-129-A |
| ) | |
| TERESO RODRIGUEZ LOPEZ ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Tommie Hardwick, Esquire
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104

                                              Respectfully submitted,

                                              s/ Kevin L. Butler
                                              KEVIN L. BUTLER
                                              First Assistant Federal Defender
                                              201 Monroe Street, Suite 407
                                              Montgomery, Alabama 36104
                                              Phone: (334) 834-2099
                                              Fax: (334) 834-0353
                                              E-mail: kevin_butler@fd.org
                                              AZ Bar Code: 014138