IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05cr129-A |
| | ) | |
| TERESO RODRIGUEZ-LOPEZ | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS STOP, SEARCH AND SEIZURES

Comes now the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and respectfully responds to Defendant Tereso Rodriguez-Lopez's Motion to Suppress Stop, Search and Seizure as follows:

**I. Factual Foundation for the Search**[1]

1. On April 19, 2005, at approximately 4:10 p.m., Alabama State Trooper Jesse Peoples ("Peoples"), while on routine patrol on Interstate 85, observed a vehicle traveling northbound at a high rate of speed. Peoples executed a stop of the 1994 Ford Crown Victoria with tinted windows bearing Texas vehicle registration #Z27 ZNK.

2. As Peoples appropriated the passenger side of the vehicle, he noticed a support Texas DPS sticker on the rear window, a can of Red Bull energy drink in the cup holder, a radar detector on the right side of the rear view mirror, and two cell phones.

3. Peoples requested and received a Texas license identifying the driver as Tereso Rodriguez ("Rodriguez") from Houston, Texas. Peoples advised Rodriguez that he was speeding 68 miles per hour in a 50 mile per hour zone. Peoples asked Rodriguez was there a reason why he was speeding 68 in a 50 zone. Rodriguez did not have a reason for speeding.

---

[1] The following description of facts is based upon the case report including a memorandum to file from Corporal Jessie Peoples, and a video tape.

4. Peoples called in Rodriguez's personal information to BLOC/HIDTA for wants, warrants and border crossings. While awaiting a response from BLOC/HIDTA, Peoples questioned Rodriguez regarding the ownership and registration of the vehicle. Peoples learned that the vehicle belonged to a friend of Rodriguez whose name was Leon Moreno ("Leon"). Leon lived in Houston, Texas. Peoples asked Rodriguez if he had the insurance papers for the vehicle. Rodriguez indicated that the papers were in the glove compartment of the vehicle. Peoples asked permission to retrieve the insurance papers from the glove compartment. Rodriguez gave Peoples permission to look for the insurance papers. Peoples went to the vehicle and looked inside of the glove compartment. When he returned to the patrol car, Peoples asked Rodriguez why was there a warning ticket in the glove compartment issued to him.

5. Peoples also questioned Rodriguez regarding his travel, the reason for the trip, and his employment. As a result of these questions, Rodriguez told Peoples that he was going to Atlanta, Georgia, to pick up a truck from a friend's house; the truck had been purchased for him by Leon, he was going to pull the truck back to Houston with the car he was driving, and he worked as a house painter. When asked the location where he would pick the truck up, Rodriguez was only able to provide an exit.

6. Peoples noticed that Rodriguez had become increasingly nervous, would not make eye contact with him, had a strong visible carotid pulse, and was exhibiting a rigid closed posture.

7. Within approximately eight minutes, BLOC/HIDTA responded and advised Peoples that the vehicle driven by Rodriguez had a recent border crossing on April 17, 2005.

8. After issuing the warning ticket, Peoples asked Rodriguez clarifying questions regarding when he picked the vehicle up from Leon, and why was there a warning in Leon's vehicle belonging to Rodriguez.

9. Peoples also asked Rodriguez whether he had been to Mexico recently. Rodriguez initially stated that he had traveled to Mexico two weeks prior, then changed his response and stated that he had been to Mexico a week earlier because his wife was ill. Rodriguez stated that he had driven his truck to Mexico and he did not know if Leon had recently gone to Mexico.

10. Peoples asked Rodriguez if he was transporting anything illegal, such as drugs. Rodrigues stated no. Peoples then asked permission to search the vehicle. Rodriguez consented to a search. During the search, Peoples found a white powdery substance, which Peoples believed to be cocaine.

## II. Rodriguez's Motion to Suppress

11. Rodriguez contends that (1) his rights were violated under the Equal Protection Clause based upon racial profiling; (2) the Fifth Amendment prohibits police interrogation under the guise of a routine questioning, and (3) the Fourth Amendment prohibits government searches conducted without consent, cause or suspicion.

12. Rodriguez's primary focus is that Peoples is racially profiling during his routine traffic stops and only targeting Hispanic or Latino individuals to request permission to search their vehicles.

## III. Applicable Case Law

**A. Equal Protection Clause and Racial Profiling.**

Defendant's claim regarding his racial profiling has no substance. Defendant has given the Court no facts to support his racial profiling claim – only speculation. His legal support is equally

dubious. The defendant has presented some case comparisons of other defendants of Hispanic or Latino origin who were stopped by Trooper Jesse Peoples for traffic violations. The defendant's statistical analysis fails to reach a viable conclusion when compared to an unknown. Specifically, the defendant has failed to present statistical data of similarly positioned African-American, Caucasians or any other minority to distinguish Hispanic and Latino defendants. Further, the cases cited by the defendant, in the wake of the Supreme Court's landmark decision in Whren v. United States, 517 U.S. 806 (1996), do not support a claim of racial profiling. Defendant claims that his race, not his speeding, caused his traffic stop. Cf. Riley v. City of Montgomery, 104 F.3d 1247, 1252 (11th Cir. 1997) (explaining how the Supreme Court's Whren decision "rejected" the Eleventh Circuit's pre-Whren standard for pretextual traffic stops, including the version of that standard set forth in United States v. Smith, 799 F.2d 704 (1986)). Indeed, Defendant appears to claim that, even assuming *arguendo* that he was speeding, Peoples stopped Defendant's car only because Defendant is Hispanic. It is absolutely clear from the facts of this case that Defendant Tereso Rodriguez-Lopez was driving a vehicle with tinted windows. Peoples could not have known the ethnicity of the Defendant prior to stopping him. This type of pretext argument, however, has little or no factual or legal support. If Defendant did, in fact, speed, as Peoples claims, there can be little question that there was a lawful and constitutional basis for stopping Defendant's car. See, e.g., United States v. Harris, 928 F.2d 1113, 1116 (11th Cir. 1991) (upholding traffic stop, distinguishing the Smith case, and finding that the arresting officer had reasonable suspicion to stop a car that he observed weaving into an emergency lane twice, where officer did not begin to follow the car until after he observed the car weave the first time); United States v. Pollock, 926 F.2d 1044, 1046-47 (11th Cir. 1991) (upholding a traffic stop over pretext challenge where the vehicle was observed weaving on the

highway).

The Supreme Court in <u>Whren</u> explained that objective legal facts, like the existence of probable cause or reasonable suspicion, justify traffic stops. <u>Id.</u> at 818-19. The subjective motivation of the arresting officer does not matter if the officer has a legitimate basis for a traffic stop under the Fourth Amendment. <u>Id.</u> at 813. Indeed, after surveying a number of Fourth Amendment precedents, the <u>Whren</u> Court explained that these cases "foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." <u>Id.</u> Although the Court made very clear that selective enforcement of the law based on race is unconstitutional, the Court made similarly clear that the basis for such a challenge rests outside of the Fourth Amendment. <u>Id.</u> Specifically, the Court stated that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." <u>Id.</u>

Here, Defendant seeks suppression of evidence under the Fourth and Fifth Amendments, and the Equal Protection Clause of the Constitution. The same remedy does not appear to be available under the Equal Protection Clause of the Fourteenth Amendment. <u>See, e.g.</u>, Samuel R. Gross & Debra Livingston, <u>Racial Profiling Under Attack</u>, 102 Colum. L. Rev. 1413, 1417 (2002) ("On the other hand, the common Fourth Amendment remedy – suppression – may not be available for equal protection violations"). Accordingly, Peoples' subjective motivations do not appear to have any bearing on these proceedings. What matters here is whether Peoples had adequate probable cause or reasonable suspicion to justify Defendant's traffic stop on objective, legal grounds. As the Tenth Circuit explained in <u>United States v. Adkins</u>, 1 Fed. Appx. 850, 851 (10th Cir. 2001), in

affirming a magistrate judge's exclusion of racial pretext testimony during a suppression hearing:

> Such a claim is appropriately brought under the Equal Protection Clause. However, as Whren makes perfectly clear, the fact that Defendant may have an equal protection claim against the arresting officer has absolutely no bearing on whether the officer's traffic stop was reasonable under the Fourth Amendment. So long as the traffic stop was objectively reasonable, the officer's subjective motivations are irrelevant.

Id. (internal citations omitted). Accordingly, the sole question before the Court is whether Peoples had a legitimate, objective basis for stopping Defendant's car. Using this approach, if Peoples' observations are believed, there can be no question that he had adequate grounds to stop Defendant's car. Conversely, if Peoples' observations are not believed, the traffic stop cannot be supported under the Fourth Amendment, regardless of any subjective intent. In sum, Defendant's traffic stop must be judged on standard, objective Fourth Amendment principles. Using such principles, the Court should find that Peoples was fully justified in stopping Defendant's car for speeding. Moreover, Defendant Rodriguez should be precluded from presenting testimony regarding racial profiling, since it is irrelevant to the present motion to suppress.

Finally, Defense Counsel has made an unfair, incomplete description and disposition of other cases prosecuted in this district that were initiated by Jesse Peoples. For example, the undersigned counsel prosecuted the case of United States v. Panfilo Rodriguez, Cr. No. 00-43-N, who was charged with possession with the intent to distribute marijuana. The defense received an adverse ruling on its motion to suppress. Panfilo Rodriguez entered a plea agreement and was sentenced to twelve months and one day imprisonment, which was an appropriate plea agreement based upon the facts of the case. The plea agreement was not the result of allegations of racial profiling.

Also, in the case of United States v. Deborah Rodriguez, Cr. No. 01-59-N, who was charged with possession with the intent to distribute cocaine hydrochloride, the government and the

defendant entered a plea agreement which resulted in Deborah Rodriguez receiving a sentence of 46 months imprisonment. Ms. Deborah Rodriguez received the benefit of the "safety valve" and consideration was given to the fact that she was allegedly raped while incarcerated in the city jail.

**B. Trooper Peoples' Questioning of the Defendant Did Not Violate the Fifth Amendment.**

In United States v. Boyce, 351 F.3d 1102, 1111 (11th Cir. 2003), (quoting United States v. Purcell, 236 F. 3d 1274, 1978-79 (11th Cir. 2001)), the Eleventh Circuit held that,

> ...there are two possible tests for when a police investigation exceeds the scope of a routine traffic stop. (citation omitted). The first comes from the Tenth Circuit and limits the questions a police officer may ask to those questions that are justified by reasonable suspicion of criminal activity or reasonable safety concerns. (citation omitted). The second test comes from the Fifth Circuit and holds that questions unrelated to the reason for the initial stop are only unlawful if they extend the duration of the initial seizure.

Since the holding in Boyce, the Supreme Court has held that "mere police questioning does not constitute a seizure,"–even if such questioning is about a topic unrelated to the initial purpose of the search or seizure–so long as it does not "prolong []...the time reasonably required to complete that [initial] mission." Muehler v. Mena, ___ U.S. ___, 125 S.Ct. 1465, 1471, 161 L.Ed.2d 299 (2005), (quoted in United States v. Hernandez, ___ F.3d ___, 2005 WL 1792229 (11th Cir.(July 29, 2005))). In this case, while awaiting a warrant/identification check, Peoples learned that (1) the Defendant was traveling from a source city to a source city; (2) he was going to pick up a truck to be towed with the car he was driving; (3) however, he did not know where in Atlanta he was going; (4) he was driving a borrowed vehicle that happened to have a warning ticket issued to the defendant in the glove compartment; and (5) he became more nervous as questions were presented. After receiving the response from BLOCK/HIDTA that the vehicle driven by the Defendant had a recent

border crossing, the totality of these circumstances "demonstrated suspicious behavior that could warrant an objective reasonable policeman to believe that the Defendant might be involved in other criminal activity." Hernandez at *3. Peoples further detained the defendant after issuing the citation because he already believed there was criminal activity afoot.

Therefore, based upon the Eleventh Circuit's holdings in United States v. Hernandez, Peoples questions did not prolong the detention, and the questions did not amount to an improper seizure.

### C. The Defendant Consented to a Search of his Vehicle, Therefore, There Was No Fourth Amendment Violation

The facts of this case are supported in the video tape recording. Peoples initially asked permission to retrieve the insurance paperwork from the glove compartment of the vehicle. It was during his efforts to verify the insurance on the vehicle that Peoples discovered a warning citation in the glove compartment that was issued to the defendant months earlier. Rodriguez has already stated that he had picked the vehicle up from his friend's house the morning of the stop. When asked why was the warning ticket issued to him in the glove compartment, Rodriguez offered no explanation. As stated in Hernandez, "[o]nce the Trooper developed this reasonable suspicion, he had a duty to investigate more. (Citing United States v. Harris, 928 F.2d 1113, 1117 (11th Cir. 1991)). The Eleventh Circuit also held that "as each answer to the Trooper's investigative questions failed to allay his concerns, the Trooper's reasonable suspicion was bolstered, thus justifying his continuing to detain Defendant, his call for the dog, and his request to search the [vehicle]." Hernandez, id. at *4.

Peoples made his request to search in Spanish, and allowed the Defendant to read the consent form in Spanish. There is no evidence that the consent to search was acquired by use of threats or force. Even if the Court believes the defendant did not consent to the search, the evidence should not be suppressed. A warrantless search of a vehicle is permitted "if the facts of the case would have justified a warrant, 'even though a warrant has not actually been obtained,'" <u>United States v. Watts</u>, 329 F. 3d 1282, 1285 (11th Cir. 2003) (quoting <u>United States v. Ross</u>, 456 U.S. 798, 809, 102 S.Ct. 2157 (1982)). The only requirements are that a car be readily mobile and that probable cause exists to believe it contains contraband. <u>Watts</u> <u>id.</u>, quoting <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940, 116 S.Ct. 2485 (1996).

Rodriguez's vehicle was clearly operational at the time of the traffic stop, and the combined circumstances that created probable cause for a search completes the factual requirements for a warrantless search. Therefore, the Defendant's motion to suppress the fruits of the search should be denied.

## **Conclusion**

WHEREFORE, the United States respectfully requests that the Court exclude any testimony or evidence related to the issue of racial profiling during Defendant Rodriguez's suppression hearing and deny the Defendant's Motion to Suppress based upon the facts and law presented.

Respectfully submitted this 19th day of August, 2005.

                                        LEURA GARRETT CANARY
                                        UNITED STATES ATTORNEY

                                        /s/Tommie Brown Hardwick
                                        TOMMIE BROWN HARDWICK
                                        One Court Square, Suite 201
                                        Montgomery, AL 36104
                                        Phone: (334) 223-7280
                                        Fax: (334) 223-7135
                                        E-mail: tommie.hardwick@usdoj.gov
                                        ASB4152 W86T

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05cr129-A |
| | ) | |
| TERESO RODRIGUEZ-LOPEZ | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler, Esquire.

          Respectfully submitted,

          /s/Tommie Brown Hardwick
          TOMMIE BROWN HARDWICK
          One Court Square, Suite 201
          Montgomery, AL 36104
          Phone: (334)223-7280
          Fax: (334)223-7135
          E-mail: tommie.hardwick@usdoj.gov
          ASB4152 W86T