IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 2:05-cr-129-A |
| | ) | |
| TERESO RODRIGUEZ LOPEZ | ) | |

**APPEAL OF MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S ORAL MOTION TO COMPEL PRODUCTION OF UN-REDACTED INFORMATION**

**COMES NOW** the Defendant, Tereso Rodriguez Lopez (Mr. Rodriguez), by and through undersigned counsel, Kevin L. Butler, and seeks review and reversal by the District Court of the Magistrate Judge's Order Denying Defendant's Oral Motion To Compel Production of Un-Redacted Information.

**Relevant Facts and Procedural History**

On April 19, 2005 at approximately 4:10 p.m., Alabama State Trooper Jesse Peoples (Trooper Peoples) stopped Mr. Rodriguez's vehicle for purportedly speeding on I-65 near mile marker 165. After issuing a warning ticket, Trooper Peoples conducted a search of the vehicle. During the search, contraband was discovered. Mr. Rodriguez was subsequently charged with possession with intent to distribute narcotics. If convicted of this offense, this Court may be required by statute to impose a mandatory ten year sentence.

Mr. Rodriguez moved to suppress the stop, search and seizure of his vehicle on the following three grounds: (1) the stop of his vehicle was in violation of the Equal Protection Clause; (2) Mr. Rodriguez was questioned in violation of the Fifth Amendment; and (3) the search of Mr.

Rodriguez's vehicle was conducted in violation of the Fourth Amendment.[1]

At a hearing on the Equal Protection claim, amongst other things, the defense will present a statistical analysis from Dr. James H. Gundlach (Dr. Gundlach), Director and Professor of Sociology at Auburn University. See Exhibit 1. Based upon a comparative analysis of warning tickets issued by Trooper Peoples, Dr. Gundlach will testify that the probability that Trooper Peoples is intentionally stopping and issuing Hispanics warning tickets (i.e. racial profiling) is very significant.[2]

In order to provide Dr. Gundlach with all the information necessary to complete his analysis for presentation to this Court, undersigned counsel has attempted to obtain from the Alabama Department of Public Safety (ADPS) accurate and complete data regarding Trooper Peoples' police practices during the last four years. As a result of Trooper Peoples' involvement in other litigation prior to the filing of this suppression motion, undersigned counsel was already in possession of a portion of the relevant and material traffic citations and warning tickets issued by Trooper Peoples. However, for the purpose of statistical accuracy, as well as to avoid issues of "staleness," undersigned counsel applied for and received a subpoena to obtain from the ADPS the traffic citations, warning tickets, and consent to search forms issued by Trooper Peoples between 2002 and the date of Mr. Rodriguez's arrest.

---

[1] Though the government and defense have opposing positions on issues (2) and (3), there are presently no discovery disputes regarding these issues and the parties are prepared to address them at an evidentiary hearing.

[2] Dr. Gundlach's written analysis and testimony will make this clearer. However, based upon undersigned counsel's initial discussions with Dr. Gundlach, he has determined that based upon a comparative analysis, the chance that Trooper Peoples acted randomly in issuing warning tickets to Hispanics is approximately 1/10000 and the probability that this case occurrence is random is less than 7 in 1 trillion.

On July 7, 2005, undersigned counsel applied for a subpoena duces tecum to the ADPS. On July 13, 2005 this Court ordered ADPS to provide counsel for Mr. Rodriguez with:

a) Copies of all traffic citations, including ticket warnings, consent to search vehicle forms and offense reports, issued by Officer Jesse Peoples, on the I-65 corridor for the following time period: June 2002 through April 2005. Said witness is to produce the race, sex and age of person stopped, descriptions of the vehicle stopped and the basis for the stop and if person was arrested as a result of Officer Peoples' stop.

b) Copies of all traffic stop reports involving Trooper Peoples' request for the use of a drug dog.

See Exhibit 2 and 3.

As stated in the Court's Order, the information and reports sought by the defense **were not limited** to the race, sex and age of the person stopped. Instead, the information sought was to include this information.

On or about July 21, 2005, counsel for the ADPS informed undersigned counsel that the information was available.[3] Upon receipt of the documents on July 22, 2005, it was discovered that the ADPS had redacted all identification information other than the name, sex and age of the person stopped. See Exhibit 4 (Examples of Redacted Documents). Additionally, all non-black individuals, including Hispanics, were identified as white by Trooper Peoples.

Defense counsel then sought court ordered production of the redacted information. Docket # 33. The ADPS asserted that pursuant to 18 U.S.C. § 2721, the information was required to be redacted. Docket #35. After court-directed informal negotiations failed to resolve the issue, on August 25, 2005, United States Magistrate Judge Delores R. Boyd conducted a hearing to determine if the defense was entitled to the information.

---

[3] On August 31, 2005, J. Harlan Lowe, Attorney for the Department of Public Safety, informed undersigned counsel that the requested consent to search forms and drug dog reports would be provided on September 2, 2005.

On August 26, 2005, the Magistrate Judge issued an order denying Mr. Rodriguez's request for un-redacted documents. See Docket # 41. The Magistrate Judge erroneously concluded that under the Driver's Privacy Protection Act of 1994 (DPPA), private information gathered by law enforcement officers during the course of traffic investigations can not be disclosed unless the Court determines a defendant's need for the information outweighs the privacy interests. Id. Mr. Rodriguez appeals the Magistrate Judge's order.

**Argument**

**The Magistrate Judge Erroneously Adopts The Alabama Department of Pubic Safety's Assertion That 18 U.S.C. § 2721 Prohibits The Disclosure Of Personal Information Gathered By Law Enforcement Officers And Erroneously Creates A New Standard For Evaluating Information Subpoenaed From the ADPS**

a.   Purpose and Provisions of the Drivers Privacy Protection Act (18 U.S.C. §§ 2721-2725)

During the late 1980's and 1990's, there were many highly publicized instances where individuals obtained and improperly used personal information they had obtain from state departments of motor vehicles. See e.g., 139 Cong. Rec. S15, 766 (Floor debate comments of Senator Harkin in which he discusses a murder committed after a person obtained personal DMV records of the victim). Additionally, many states were generating substantial revenue through the sale of information gathered through the administrative processes of departments of motor vehicles. See e.g., Travis v. Reno, 163 F.3d 1000, 1002 (7th Cir. 1998)(noting that the state of Wisconsin was generating approximately $8,000,000.00 in annual revenue through the sale of DMV records).

In response, Congress enacted the Driver's Privacy Protection Act of 1994 (DPPA), later codified as 18 U.S.C. §§ 2721 - 2725. Pursuant to the DPPA, a state department of motor vehicles shall not knowingly disclose or otherwise make available to any person or entity, personal

information about any individual obtained by the department of motor vehicles in connection with a motor vehicle record. See 18 U.S.C. § 2721(a). The DPPA provides:

> "motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles;

Therefore, a department of motor vehicles is prohibited from disclosing motor vehicle records obtained by the department of motor vehicles for the specific purposes listed above. See 18 U.S.C. 2725(1).

The DPPA includes **absolutely no restrictions** upon the Court ordered production of personal information obtained by law enforcement during the investigation of a traffic violation or criminal activity. Because the DPPA has no applicability to and contains no restrictions regarding the production of information gathered during traffic enforcement, the DPPA contains **absolutely no language** authorizing or requiring a court to conduct a balancing test regarding the need/necessity of the information versus privacy interests when reviewing issues regarding production of this information. Additionally, no court has extended the provisions of the DPPA to information gathered by law enforcement during the investigation of traffic violations or criminal activity.

Simply put, the DPPA provides no authority for the State of Alabama to withhold personal information gathered as a result of law enforcement activity nor does it authorize a court to perform any balancing test when law enforcement information is properly requested in a criminal proceeding.

b.  <u>Even If Information Gathered During Traffic Enforcement Is Considered a "Motor Vehicle Record," the DPPA Requires it Be Provided in Criminal Proceedings.</u>

Even if information gathered by law enforcement during the course of a criminal investigation could be considered to be a "motor vehicle record" the act mandates production of such

information in criminal proceedings. 18 U.S.C. § 2721(b)(4) provides that one of the permissible uses of the "motor vehicle records" is:

> For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

Here, Mr. Rodriguez obtained a federal court order which required the ADPS to produce information in its possession for use in connection with this criminal proceeding in federal court. As this use is authorized under the statute, the information must be provided. Neither 18 U.S.C. § 2721(b)(4) nor any other section of the DPPA contains any language permitting a court to conduct a balancing test when determining whether to compel enforcement with this statute.

c.    By Erroneously Applying a Balancing Test that is Not Authorized under the DPPA, the Court Improperly Prejudged Defendant's Proof

As discussed *supra*, the DPPA is not applicable to identification information gathered pursuant to law enforcement activity. Nor does the DPPA create authorization for a court to apply a balancing test when determining whether to enforce a court order for the production of information.

However, if this Court adopts the Magistrate Judge's interpretation of 18 U.S.C. §§ 2721-2725 and the corresponding balancing test applied, Mr. Rodriguez objects to the findings contained in the Magistrate Judge's balancing analysis.

In determining the defendant's "need" for the requested information, without allowing for the presentation of evidence, the Magistrate Judge prejudged the defendant's ability to prove an Equal Protection Violation. Docket # 41 at 4-5. The Court erroneously assumed the position that the only evidence that will be presented by the defense is (1) evidence showing that Trooper Peoples

has been involved in this Court in multiple cases involving Hispanics and (2) comparative evidence showing that Trooper Peoples' investigation of Hispanics is substantially greater than Hispanics' representation in Alabama. Docket # 41 at 4. Because the Court pre-supposes no other evidence will be presented and that this evidence will not support an Equal Protection claim, the Court concludes that the defense does not need the un-redacted information sought by court order. Id.

Mr. Rodriguez is aware of the evidentiary burden placed upon a party raising an Equal Protection claim. See e.g., United States v. Armstrong, 517 U.S. 456 (1996); United States v. Smith, 231 F.3d 800 (11th Cir. 2000). Contrary to the Magistrate Judge's pre-hearing presumption, at the suppression hearing scheduled in this matter, the defense will call Dr. James H. Gundlach, Director and Professor of Sociology at Auburn University (Dr. Gundlach). Dr. Gundlach has 30 years of experience as a statistical professor, and he has been previously qualified as a court expert in statistical analysis.[4] Dr. Gundlach will present evidence showing that through an analysis of both the data provided by ADPS and gathered by Dr. Gundlach and the defense (regarding the vehicle travel and traffic on I-65), it can be shown that Trooper Peoples is selectively and specifically targeting Hispanics for issuance of warning tickets.

As the Court's pre-hearing presumptions regarding the potential viability of the evidence supporting an Equal Protection claim are inaccurate, the balancing test employed by the Magistrate Judge is also inaccurate.

## Conclusion

---

[4] The United States Attorney was a party to the action in which Dr. Gundlach was called and is familiar with his qualifications.

As there is no authority for withholding the information requested, the defense respectfully requests that this Court vacate the ruling of the Magistrate Judge and compel the full and complete production of the information sought in the subpoena to the ADPS.

        Respectfully submitted,

        s/ Kevin L. Butler
        KEVIN L. BUTLER
        First Assistant Federal Defender
        201 Monroe Street, Suite 407
        Montgomery, Alabama 36104
        Phone: (334) 834-2099
        Fax: (334) 834-0353
        E-mail: kevin_butler@fd.org
        AZ Bar Code: 014138

### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 2:05-cr-129-A |
| ) | |
| TERESO RODRIGUEZ LOPEZ ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Tommie Hardwick, Esquire
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, Alabama 36104

    Respectfully submitted,

    s/ Kevin L. Butler
    KEVIN L. BUTLER
    First Assistant Federal Defender
    201 Monroe Street, Suite 407
    Montgomery, Alabama 36104
    Phone: (334) 834-2099
    Fax: (334) 834-0353
    E-mail: kevin_butler@fd.org
    AZ Bar Code: 014138